IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

No. 14-0766

FILED

April 9, 2015

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel. FORD MOTOR COMPANY; JACK GARRETT FORD, INC., a West Virginia Corporation; and DOES 1-50 INCLUSIVE,
Petitioners

v.

THE HONORABLE DAVID W. NIBERT, Judge of the Circuit Court of Roane County; and CHRISTIE SIEGEL, Individually and as Successor-In-Interest to the Estate of Jordan Siegel and Ashley Siegel, deceased; MARC SIEGEL, Individually and as Successor-In-Interest to the Estate of Jordan Siegel and Ashley Siegel, deceased; DAWN SIEGEL, an Individual; ERICA FOX, an individual; CHRISTOPHER FOX, an individual; BROOKLYN SIEGEL, by and through her Guardian MARC SIEGEL; and MADISON OWENS, by and through her Guardian, DAWN SIEGEL,
Respondents

Petition for Writ of Prohibition

WRIT GRANTED AS MOULDED

Submitted: January 14, 2015
Filed: April 9, 2015

Gregory G. Garre, Esq.
Michael E. Bern, Esq.
Latham & Watkins LLP
Washington, District of Columbia

T. Keith Gould, Esq.
The Miley Legal Group
Clarksburg, West Virginia
Counsel for the Respondents
Christie Siegel, the Estate of

Michael Bonasso, Esq.
William Hanna, Esq.
Bradley J. Schmalzer, Esq.
Flaherty Sensabaugh Bonasso, PLLC
Charleston, West Virginia
Counsel for the Petitioners Ford
Motor Company and Jack Garrett Ford

Jordan Siegel and Ashley Siegel,
Marc Siegel, Dawn Siegel, Erica
Fox, Christopher Fox, Brooklyn
Siegel and Madison Owens

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.

JUSTICE BENJAMIN and JUSTICE LOUGHRY dissent and reserve the right to file separate opinions.

JUSTICE KETCHUM concurs and reserves the right to file a separate opinion.

ii

SYLLABUS BY THE COURT

1.    "'Prohibition will lie to prohibit a judge from exceeding his legitimate powers.' Syl. Pt. 2, *State ex rel. Winter v. MacQueen*, 161 W. Va. 30, 239 S.E.2d 660 (1977)."  Syl. Pt. 1, *State ex rel. Mylan, Inc. v. Zakaib*, 227 W. Va. 641, 713 S.E.2d 356 (2011).

2.    "By using the term "shall," the Legislature has mandated that courts must consider the eight factors enumerated in West Virginia Code § 56-1-1a (Supp.2010), as a means of determining whether, in the interest of justice and for the convenience of the parties, a claim or action should be stayed or dismissed on the basis of forum non conveniens." Syl. Pt. 5, *State ex rel. Mylan, Inc. v. Zakaib*, 227 W. Va. 641, 713 S.E.2d 356 (2011).

3.    "In all decisions on motions made pursuant to West Virginia Code § 56-1-1a (Supp.2010), courts must state findings of fact and conclusions of law as to each of the eight factors listed for consideration under subsection (a) of that statute."  Syl. Pt. 6, *State ex rel. Mylan, Inc. v. Zakaib*, 227 W. Va. 641, 713 S.E.2d 356 (2011).

Workman, Chief Justice:

This original jurisdiction action is before the Court upon a petition for writ of prohibition brought by Ford Motor Company ("Ford") and Jack Garrett Ford, Inc., (both entities referred to collectively as "the Petitioners") seeking to prohibit the Honorable David W. Nibert, Judge of the Circuit Court of Roane County, West Virginia, from taking any further action in the case below and from denying the Petitioners' motion to dismiss the case based upon forum non conveniens. Having considered the parties' briefs and arguments and the appendix record, we find that the circuit court failed to make findings of fact and conclusions of law as required by West Virginia Code § 56-1-1a (2012). Therefore, the Court grants the writ as moulded and remands the case for further action consistent with this opinion.

## I. Factual and Procedural Background

According to the allegations in the Complaint, in 1999, Jack Garrett Ford, Inc., sold a 1999 model Ford Expedition to an unidentified individual from the dealership located in Spencer, West Virginia. The vehicle was designed by Ford in Dearborn, Michigan, and manufactured by Ford in Wayne, Michigan.[1] Moreover, Ford has its principal place of business in Michigan. In 2006, years after the initial sale, the Expedition was sold to a

---

[1]It is significant that Jack Garrett Ford, Inc., has consented to jurisdiction in Michigan.

2

Michigan resident not identified in the litigation.  Approximately two years later, in 2008, the vehicle again was sold in the State of Michigan by a Michigan resident to the Respondents,[2] who were the plaintiffs below [3] and also Michigan residents.

On June 22, 2012, an accident occurred in which the subject Expedition, which was being operated by the Respondent Dawn Siegel, rolled-over multiple times after swerving to avoid hitting a Honda Odyssey that had made contact with the Expedition.  The operator of the Honda Odyssey fled the scene in the vehicle.  Neither the Honda Odyssey, nor its driver, were located until days later.  At the time of the accident, Mrs. Siegel and her six children and step-children were in the Expedition. Two children were killed in the accident. The other family members suffered serious injuries to heads, arms and legs, as well as significant bruising.

On February 12, 2014, the Respondents filed a complaint in the Circuit Court

---

[2]For purposes of this opinion, the Respondents do not include the circuit judge named in this action before the Court.

[3]The Respondents include Christie Siegel, individually and as successor-in-interest to the estate of Jordan Siegel and Ashley Siegel, deceased; Marc Siegel, individually and as successor-in-interest to the estate of Jordan Siegel and Ashley Siegel, deceased; Dawn Siegel, an individual, Erica Fox, an individual, Christopher Fox, an individual; Brooklyn Siegel, by and through her guardian Marc Siegel; and Madison Owens, by and through her guardian, Dawn Siegel.

3

of Roane County, West Virginia, asserting claims against Ford, Jack Garrett Ford, Inc.,

Kristin Kae Boss, the Ohio driver of the Honda Odyssey that struck the Respondents' car,

and Prestige Delivery Systems ("Prestige"), Ms. Boss's employer. In the Complaint, the

Respondents allege various torts against Ford and/or Jack Garrett Ford, Inc., including strict

products liability based upon manufacturing and design defects in the Expedition.

Ford, Jack Garrett Ford, Inc., and Prestige jointly moved to dismiss the civil

action based upon the doctrine of forum non conveniens as set forth in West Virginia Code

§ 56-1-1a. The Petitioners, analyzing each of the eight factors set forth in the statute, argued

that Michigan was the correct forum for the litigation and that West Virginia had "little to

no nexus to the subject matter in controversy in this case."

The Respondents then bifurcated their claims by filing a separate complaint

against Prestige and Ms. Boss in the State of Ohio, while maintaining this action against

Ford and Jack Garrett Ford, Inc., in West Virginia. The Respondents voluntarily dismissed

Prestige and Ms. Boss from the instant action.[4]

---

[4]The parties have informed the Court that since the Respondents' filing of a complaint against Prestige and Ms. Boss in Ohio, the lower court granted Prestige's and Ms. Boss's motion to dismiss that action based upon forum non conveniens. *See Christie Siegel, et al. v. Kristin Kae Boss, et al.,* Case No. CV-14-826326 (Ct. Com. Pl. Cuyahoga Cnty. Aug. 21, 2014). The Respondents are appealing that dismissal in Ohio.

4

On May 2, 2014, the Respondents filed their opposition to the Petitioners' motion to dismiss, relying upon syllabus point two of *Abbott v. Owens-Corning Fiberglass Corp.*, 191 W. Va. 198, 444 S.E.2d 285 (1994), which provides:

> "The common law doctrine of *forum non conveniens* is available to courts of record in this State. *The doctrine accords a preference to the plaintiff's choice of forum, but the defendant may overcome this preference by demonstrating that the forum has only a slight nexus to the subject matter of the suit and that another available forum exists which would enable the case to be tried substantially more inexpensively and expeditiously.* To the extent that *Gardner v. Norfolk & Western Railway Co.*, [179] W. Va. [724], 372 S.E.2d 786 (1988), *cert. denied*, 489 U.S. 1016, 109 S. Ct. 1132, 103 L.Ed. 2d 193, (1989), declined to apply this doctrine, it is overruled." Syl. pt. 3, *Norfolk and Western Ry. Co. v. Tsapis*, 184 W. Va. 231, 400 S.E.2d 239 (1990).

(Some emphasis added). Based upon the foregoing language in *Abbott*, the Respondents maintained that "the West Virginia Supreme Court has required a moving party to offer specific evidence that another forum is *substantially* more convenient and inexpensive." Further, relying upon the holding in *Abbott* that "[i]n order for this Court to review a trial court's decision regarding the application of the doctrine of *forum non conveniens,* it is necessary for the trial court to provide a record in sufficient detail which will show the basis of its decision[,]" 191 W. Va. at 204, 444 S.E.2d at 291, the Respondents argued that the Petitioners offered "[m]ere allegations and conclusions," as support for their motion and failed to support it with any evidence.

5

The circuit court conducted a hearing on the Petitioners' motion on May 8, 2014. At the conclusion of the hearing, the court requested that the parties submit proposed orders. On July 3, 2014, the circuit court entered the Respondents' proposed order denying the Petitioners' motion to dismiss. Specifically, the circuit court found "the reasoning of *Abbott* persuasive" and "controlling." Thus, applying the law enunciated in *Abbott*, the court determined that the Petitioners not only "failed to provide any substantive evidence that West Virginia was substantially more inconvenient and expensive than the alternate forum[,]" but also "merely relied on conclusory allegations in their pleading." The circuit court further found that the Petitioners failed: 1) "to identify a single witness who believed West Virginia is unfairly burdensome or a witness who refuses to appear in West Virginia[;]" 2) to show that they were "substantially limited in their ability to present evidence or witnesses" in West Virginia; 3) "to identify any additional legal expenses incurred by litigating this case in West Virginia[;]" and 4) to "provide any evidence supporting the arguments that this case would burden West Virginia courts." The circuit court also found that

> with respect to remedies available in Michigan, this Court is mindful that Michigan enforces a statute of repose. Michigan's statute of repose requires a plaintiff to prove their case without the benefit of presumptions, like strict liability, if the product has been in use longer than 10 years. The subject vehicle is a 1999 Ford Expedition so Michigan's statute of repose would apply. While not necessarily determinative, Michigan's statute of repose is inconsistent with the principles underlying West Virginia's doctrine of strict products liability, which is critical in protecting West Virginia consumers.

Lastly, the circuit court summarily stated in its order that "in evaluating the factors described

6

in § 56-1-1a, this Court finds that Plaintiffs choice of forum in West Virginia is appropriate

as well." There was no specific evaluation of the eight enumerated factors set forth in West

Virginia § 56-1-1a.

## II. Standard of Review

This Court has consistently held that "'[p]rohibition will lie to prohibit a judge

from exceeding his legitimate powers.' Syl. Pt. 2, *State ex rel. Winter v. MacQueen*, 161 W.

Va. 30, 239 S.E.2d 660 (1977)." Syl. Pt. 1, *State ex rel. Mylan, Inc. v. Zakaib*, 227 W. Va.

641, 713 S.E.2d 356 (2011). In *Mylan*, in discussing the standard of review applicable to

venue disputes, we stated that

> [i]n the context of disputes over venue, such as dismissal for
> forum non conveniens, this Court has previously held that a writ
> of prohibition is an appropriate remedy "to resolve the issue of
> where venue for a civil action lies," because "the issue of venue
> [has] the potential of placing a litigant at an unwarranted
> disadvantage in a pending action and [ ] relief by appeal would
> be inadequate." *State ex rel. Huffman v. Stephens*, 206 W. Va.
> 501, 503, 526 S.E.2d 23, 25 (1999); *see also State ex rel. Riffle
> v. Ranson*, 195 W. Va. 121, 124, 464 S.E.2d 763, 766 (1995)
> ("In recent times in every case that has had a substantial legal
> issue regarding venue, we have recognized the importance of
> resolving the issue in an original action.").
>
> This Court typically reviews a circuit court's decision on
> venue, including forum non conveniens, under an abuse of
> discretion standard. *See* Syl. Pt. 3, *Cannelton Industries, Inc. v.
> Aetna Cas. & Sur. Co. of Am.*, 194 W. Va. 186, 460 S.E.2d 1
> (1994) ("A circuit court's decision to invoke the doctrine of
> forum non conveniens will not be reversed unless it is found that
> the circuit court abused its discretion."); *Nezan v. Aries Techs.,*

7

*Inc.*, 226 W. Va. 631, 637, 704 S.E.2d 631, 637 (2010) ("On the issue of forum non conveniens, we have held that the standard of review of this Court is an abuse of discretion."). The Mylan Petitioners, however, contend that this Court's review should be de novo because the circuit judges misapplied and/or misinterpreted the controlling statute. In *Riffle*, this Court explained:

> The normal deference accorded to a circuit court's decision to transfer a case, Syl. pt. 3, *Cannelton Industries, Inc. v. Aetna Casualty & Surety Co.*, 194 W. Va. 186, 460 S.E.2d 1 (1994) ("[a] circuit court's decision to invoke the doctrine of *forum non conveniens* will not be reversed unless it is found that the circuit court abused its discretion"), does not apply where the law is misapplied or where the decision to transfer hinges on an interpretation of a controlling statute. *See Mildred L.M. v. John O.F.*, 192 W. Va. 345, 350, 452 S.E.2d 436, 441 (1994) ("[t]his Court reviews questions of statutory interpretation *de novo*."). Under these circumstances, our review is plenary.

*Mylan*, 227 W. Va. at 645, 713 S.E.2d at 360-61. In the instant matter, because the Petitioners ask this Court to decide whether the circuit court erroneously based its decision on the *Abbott* case, rather than the forum non conveniens statute, West Virginia Code § 56-1-1a, our review is de novo. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

## III. Discussion

The issue before the Court is whether the circuit court failed to consider the

statutory factors set forth in West Virginia Code § 56-1-1a in determining whether to dismiss the case for forum non conveniens. The Petitioners maintain that the circuit court failed to heed this Court's precedent requiring it to consider all the statutory forum non conveniens factors, misapplied the factors it did consider, and overlooked the fact that this case lacks any meaningful connection to West Virginia. Conversely, the Respondents maintain that "[b]ecause the Circuit Court considered and applied all of the W. Va. Code § 56-1-1a factors as required by *State ex rel. Mylan v. Zakaib*, 227 W. Va. 641, 713 S.E.2d 356 (2011)[,] it did not exceed its authority . . . ."

At the heart of this case is West Virginia's forum non conveniens statute, West Virginia Code § 56-1-1a, which provides:

> (a) In any civil action if a court of this state, upon a timely written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action, or dismiss any plaintiff: *Provided, That the plaintiff's choice of a forum is entitled to great deference, but this preference may be diminished when the plaintiff is a nonresident and the cause of action did not arise in this State*. In determining whether to grant a motion to stay or dismiss an action, or dismiss any plaintiff under the doctrine of forum non conveniens, *the court shall consider*:
> (1) Whether an alternate forum exists in which the claim or action may be tried;
> (2) Whether maintenance of the claim or action in the courts of this State would work a substantial injustice to the moving party;

9

(3) Whether the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;

(4) The state in which the plaintiff(s) reside;

(5) The state in which the cause of action accrued;

(6) Whether the balance of the private interests of the parties and the public interest of the State predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this State. Factors relevant to the private interests of the parties include, but are not limited to, the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of a view of the premises, if a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Factors relevant to the public interest of the State include, but are not limited to, the administrative difficulties flowing from court congestion; the interest in having localized controversies decided within the State; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty;

(7) Whether not granting the stay or dismissal would result in unreasonable duplication or proliferation of litigation; and

(8) Whether the alternate forum provides a remedy.

. . . .

(e) A court that grants a motion to stay or dismiss an action pursuant to this section shall set forth specific findings of fact and conclusions of law.

(Emphasis added).

This Court has previously examined the effect that the foregoing statute has on

10

all cases involving the doctrine of forum non conveniens.  In syllabus points five and six of

*Mylan*, we held that:

> *By using the term "shall," the Legislature has mandated that courts must consider the eight factors enumerated in West Virginia Code § 56-1-1a (Supp.2010)*, as a means of determining whether, in the interest of justice and for the convenience of the parties, a claim or action should be stayed or dismissed on the basis of forum non conveniens.

> In all decisions on motions made pursuant to West Virginia Code § 56-1-1a (Supp.2010), *courts must state findings of fact and conclusions of law as to each of the eight factors listed for consideration under subsection (a) of that statute*.

227 W. Va. at 643, 713 S.E.2d at 358, Syl. Pt. 6 (emphasis added).


While the circuit court mentions West Virginia Code § 56-1-1a in its order, it specifically finds that *Abbott* is still controlling.  Further, the circuit court fails to state "findings of fact and conclusions of law as to the eight factors" listed in the statute, despite both the Legislature and this Court mandating that such findings of fact and conclusions of law be expressly made when determining whether forum non conveniens is applicable. *See id.*; 227 W. Va. at 642-43, 713 S.E.2d at 357-58.  Rather, what is gleaned from our examination of the circuit court's order is that it solely relied upon this Court's decision in *Abbott*, which predated both West Virginia Code § 56-1-1a and this Court's decision in *Mylan*.

Given the circuit court's failure to properly evaluate the Petitioners' motion to dismiss in a manner that comports with West Virginia Code § 56-1-1a, upon remand, the circuit court should re-evaluate forum non conveniens in the manner set forth in the statute, as well as in this Court's decisions in *Mace v. Mylan Pharmaceuticals, Inc.,* 227 W. Va. 666, 714 S.E.2d 223 (2011), and *Mylan.*  For example, regarding the first statutory factor concerning whether an alternate forum exists, this Court held in syllabus points eight and nine of *Mace* that:

> Under West Virginia Code § 56-1-1a (Supp.2010), dismissal of a claim or action on the basis of forum non conveniens presupposes at least two forums in which the defendant is amenable to process; the statute furnishes criteria for choice between them. In the event that the defendant is not amenable to process in any alternate forum, dismissal of a claim or action under this statute would constitute error.

> In considering "whether an alternate forum exists in which the claim or action may be tried" pursuant to West Virginia Code § 56-1-1a(a)(1) (Supp.2010), an alternate forum is presumed to "exist" where the defendant is amenable to process. Such presumption may be defeated, however, if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all. In such cases, the alternate forum ceases to "exist" for purposes of forum non conveniens, and dismissal in favor of that forum would constitute error.

227 W. Va. at 668, 714 S.E.2d at 225. In the instant matter, the circuit court failed to mention, discuss or apply the law enunciated by this Court in *Mace* in its determination of whether an alternative forum existed.

12

Further, in the instant matter, the circuit court determined that "Michigan enforces a statute of repose." It is incumbent upon us to point out that the circuit court made this determination without any supporting legal authority to do so. In fact, according to the appendix record, the applicable Michigan statute upon which the circuit court relies is Michigan Compiled Laws Annotated § 600.5805(13) (LexisNexis 2004 & Supp. 2014), which provides: "The period of limitations is 3 years for a products liability action. However in the case of a product that has been in use for not less than 10 years, the plaintiff, in proving a prima facie case, shall be required to do so without benefit of any presumption." This is not a statute of repose, but a statute of limitations. As the Michigan Court of Appeals stated in *Frankenmuth Mutual Insurance Co. v. Marlette Homes, Inc.*, 573 N.W.2d 611 (Mich. 1998), when presented with Michigan's statute of repose,[5]

---

[5]Michigan's statute of repose, Michigan Compiled Laws Annotated § 600.5839(1) (LexisNexis Supp. 2014), provides as follows:

> (1) A person shall not maintain an action to recover damages for injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of an improvement to real property, or an action for contribution or indemnity for damages sustained as a result of such injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, unless the action is commenced within either of the following periods:
> (a) Six years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.
> (b) If the defect constitutes the proximate cause of

(continued...)

[t]he Court of Appeals explained how such a measure [referring to Michigan's statute of repose] differs from a statute of limitation:

> A statute of repose limits the liability of a party by setting a fixed time after the sale or first use of an item beyond which the party will not be held liable for defects in it or injury or damage arising from it. Unlike a statute of limitations, a statute of repose may bar a claim before an injury or damage occurs. *O'Brien v. Hazlet & Erdal*, 410 Mich. 1, 15, 299 N.W.2d 336 (1980); *Oole v. Oosting*, 82 Mich. App. 291, 298-300, 266 N.W.2d 795 (1978).

573 N.W.2d at 612 n.3.

Upon remand, when giving due consideration of West Virginia Code §

---

[5](...continued)
the injury or damage for which the action is brought and is the result of gross negligence on the part of the contractor or licensed architect or professional engineer, 1 year after the defect is discovered or should have been discovered. However, an action to which this subdivision applies shall not be maintained more than 10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.
    (2) *A person shall not maintain an action to recover damages based on error or negligence of a licensed professional surveyor in the preparation of a survey or report more than 6 years after the survey or report is recorded or is delivered to the person for whom it was made or the person's agent.*

(Emphasis added).

56-1-1a(a)(1) and (8), regarding whether a remedy exists in Michigan,[6] we direct the circuit

court's attention to the *Mylan* decision, wherein we stated:

> [T]he Supreme Court in *Piper Aircraft* [*Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)] acknowledged that, in rare instances, a change in substantive law in an alternate forum may be so significant that it would, in effect, eliminate the plaintiff's chance of recovery in the case. In such instances, the law of the alternate forum cannot be ignored. Thus, the United States Supreme Court stated that "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight. . . ." *Id*. at 254, 102 S.Ct. 252. Importantly, however, the facts of *Piper Aircraft*

---

[6]The Respondents argue that the Michigan statute is a statute of repose and that because of the Michigan statute "the substantive difference between the States is so great that Michigan law would abrogate Plaintiffs' strict liability in tort case." To support their argument, the Respondents ask this Court to adopt the reasoning of the Supreme Court of New Jersey in *Gantes v. Kason Corp.*, 679 A.2d 106 (N.J. 1996), wherein the representatives of decedent's estate filed a complaint alleging, inter alia, strict liability in New Jersey, where the manufacturer of a piece of machinery was located. The accident causing the decedent's death occurred in Georgia. The action was filed in New Jersey was because Georgia had a statute of repose that would have barred the action, while New Jersey had a statute of limitations that would allow the action to go forward. The primary issue before the New Jersey court centered upon choice of laws and the New Jersey court ultimately determined that it would apply its statute of limitations, which allowed the case to proceed. On the issue of forum non conveniens, the court found that the issue was not properly before it; however, it also noted that "dismissal pursuant to the doctrine of *forum non conveniens* cannot occur if the transfer will result in significant hardship to the plaintiffs." *Id*. at 499. In *Gantes*, the New Jersey court found that "without doubt, a dismissal of this action will cause severe hardship to plaintiff. If this action cannot proceed in New Jersey, plaintiff will be left with no forum in which to proceed and will be denied recovery altogether." *Id*.

Such is not the case in the instant matter before the Court. Unlike the *Gantes* decision, Michigan's law does not act as a bar to the Respondents' action in Michigan. It only eliminates a presumption because more than ten years has passed. Accordingly, we decline to adopt the law enunciated by the New Jersey court in *Gantes*.

15

made clear that the remedy offered by an alternate forum is not rendered inadequate simply because that forum does not recognize one of several claims asserted by a plaintiff. *Id.* at 255, 102 S. Ct. 252 ("Although the relatives of the decedents may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly.")

*Mylan*, 227 W. Va. at 647 n.5, 713 S.E.2d at 362 n.5 (quoting, in part, *Piper Aircraft*, 454 U.S. at 254-55). In the instant action, the circuit court found that "[w]hile not necessarily determinative, Michigan's statute of repose is inconsistent with the principles underlying West Virginia's doctrine of strict products liability." Being "inconsistent with principles" of West Virginia law, however, is not enough under our law. Rather, the circuit court must examine whether the remedy under Michigan law "is so clearly inadequate or unsatisfactory that it is no remedy at all." *Mace*, 227 W. Va. at 668, 714 S.E.2d at 225, at Syl. Pt. 9, in part.

## IV. Conclusion

Based upon the foregoing, this Court issues the requested writ as moulded. The action is remanded for further consideration of the Petitioners' motion to dismiss for forum non conveniens. On remand, the circuit court is instructed to consider the law enunciated by this Court in *Mace* and *Mylan* and to set forth clear findings of fact and conclusions of law as to each of the eight factors listed in West Virginia Code § 56-1-1a whether the circuit court ultimately grants or denies the motion to dismiss.

Writ granted as moulded.

16